**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MONIQUE VANDYKE,

Plaintiff,

Case No. 2:24-cv-12322

v.

Hon. Brandy R. McMillion
United States District Judge

DRS. BOOKWALTER & FEE, P.C.
*d/b/a* PLYMOUTH ORTHODONTICS,

Defendant.
_______________________________/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16)**

Plaintiff Monique Vandyke ("Vandyke" or "Plaintiff") filed this employment discrimination suit against her former employer, Drs. Bookwalter & Fee, P.C.[1], doing business as Plymouth Orthodontics ("Defendant"), for discrimination, retaliation, harassment, hostile work environment, and wrongful discharge in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Michigan Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* ("ELCRA"), and Michigan public policy. *See generally* ECF No. 1. In the Motion before the Court the Defendant seeks summary judgment pursuant to Federal Rule of Civil

[1] The Court notes the official name mentioned elsewhere in the record is Drs. Bookwalter, Fee and Wright, P.C. *See* ECF No. 16-8, PageID.570; ECF No. 16-10, PageID.588.

Procedure 56(a), contending Vandyke failed to show a genuine dispute of material fact on her claims. *See generally* ECF No. 16. The Motion has been adequately briefed, and the Court can rule without requiring oral argument. *See* ECF Nos. 18, 19; E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.**

Vandyke is an African American woman who worked as an insurance coordinator for the Defendant, an orthodontics practice currently owned by Dr. Cynthia Fee ("Dr. Fee"), Dr. Nicole Wright ("Dr. Wright"), and Dr. Nicholas Shirey ("Dr. Shirey") in Plymouth, Michigan. *See* ECF No. 1, PageID.3; ECF No. 16, PageID.463; ECF No. 16-13, PageID.609. During the time of Vandyke's employment, Dr. Fee and Dr. Wright made joint employee/personnel decisions. *See* ECF No. 16-9, PageID.575; ECF No. 16-10, PageID.588.[2] Excluding the doctors, the orthodontics practice operates with a small staff around 15 people. *See* ECF No. 16-10, PageID.588.

In January 2022, Vandyke was hired as an insurance coordinator. ECF No. 16, PageID.475. She was required to schedule new patients, track their related documentation, address concerns related to their first appointment, insurance, and

[2] The Court recognizes that although Dr. Shirey was employed with Defendant and was aware of the circumstances surrounding and leading to Vandyke's termination, he testified that he was not involved in the decision to ultimately terminate her employment. *See* ECF No. 16-13, PageID.611.

answer the telephone for the front office. *Id.*; ECF No. 16-9, PageID.575; ECF No. 16-10, PageID.589. In May 2022, Defendant hired Michelle Smith ("Smith") to share responsibility for front desk related tasks. ECF No. 16, PageID.475-476. Smith was primarily responsible for patient scheduling. *Id.* at PageID.476.[3]

Vandyke and Smith did not get along with one another. *See id.* From August until November 2022, Vandyke alleges Smith used several racial slurs, such as "I's," "You's," and "Yessum," daily as a mockery of slavery. *See id.*; ECF No. 18, PageID.848, 865. Vandyke contends she verbally informed Dr. Fee and Dr. Wright about Smith's actions in August 2022. *See* ECF No. 16-15, PageID.670. In November 2022, Vandyke emailed a formal complaint to Dr. Fee and Dr. Wright about Smith's racially offensive comments, where she provided context on how those statements were offensive. *See* ECF No. 16, PageID.476; ECF No. 16-27, PageID.715; ECF No. 16-10, PageID.590. Around the same time, Smith complained about Vandyke to Dr. Wright and Dr. Fee about Vandyke's behavior toward her. *See* ECF No. 16-12, PageID.604.

In December 2022, Dr. Wright and Dr. Fee held a meeting regarding VanDyke's complaints, where Smith and VanDyke were allowed to address their grievances with each other. *See* ECF No. 16-17, PageID.692. After the meeting,

---

[3] Vandyke and Smith were the only two employees who worked at the front desk. *See* ECF No. 16-11, PageID.601.

and requesting a statement from Vandyke, Dr. Wright and Dr. Fee jointly submitted a report that memorialized what was discussed. *See* ECF No. 16-18. In the report, Dr. Wright and Dr. Fee acknowledged Smith's usage of the racial slurs, prohibited her from using them, and concluded, in their view, there was no racial animus or intent with Smith's conduct. *See* ECF No. 16, PageID.477. Things continued amicably from there until the turn of the new year.

At the end of 2022, Vandyke had been absent for 13.5 days. *See* ECF No. 16-5, PageID.527. However, no complaints were made, and her absences were never presented as an issue during this time. In January 2023, Defendant implemented an attendance policy which Vandyke alleges targeted her. *See* ECF No. 16-36. A few weeks later, Vandyke reported to Dr. Fee and Dr. Wright that Smith had resumed using the same "yessum" language. *See* ECF No. 16-15, PageID.641.

In March 2023, Vandyke as well as two of her colleagues were notified that their absences were becoming excessive and placing a strain on their other coworkers. *See* ECF No. 16, PageID.478; ECF No. 16-21, PageID.703. Vandyke cited health issues as the reason she was unable to make it to work on time. *See* ECF No. 16, PageID.478. Eventually, Smith emailed Dr. Fee and Dr. Wright about Vandyke's absences, alleging that her attendance was affecting front desk activities. *See id.*; ECF No. 16-22, PageID.705. Shortly after, Vandyke emailed Dr. Fee and Dr. Wright stating that her absence was due to illness; and she made another formal

report about the discriminatory actions of Smith that had been ongoing since 2022. *See* ECF No. 16-27, PageID.175.

In response to her email, Dr. Wright reached out to schedule a meeting to discuss Vandyke's concerns. *See* ECF No. 16-28, PageID.717-719. In early May after a negative interaction between Vandyke and Smith, Dr. Fee and Dr. Wright installed a camera to monitor the front desk. On May 9, 2023, Vandyke met with Dr. Fee and Dr. Wright following her formal complaint. While they addressed Vandyke's concerns about Smith's behavior, they also addressed Vandyke's absences. *See* ECF No. 16-30, PageID.723-724.

On May 15, Dr. Fee asked Vandyke to train two of her colleagues on certain tasks she performed, as a way to improve office efficiency. *See* ECF No. 16-31, PageID.727-728. However, Vandyke refused because it was additional job duties which she believed did not fall under her job title. *See* ECF No. 16-31, PageID.727. Five days later, Dr. Fee emailed Vandyke about her recent "unhappiness" while working within the office. *See* ECF No. 16-32, PageID.730. She presented the option that Vandyke could find another job or agree to meet team expectations, while reiterating the scope of her job responsibilities and informing her that her responsibilities did not entail "decid[ing] what you will and will not do." *Id.* Vandyke responded, expressing her disappointment with how her report of racial

discrimination had been handled, but reassured Dr. Fee that she did not want to resign from her position. *See* ECF No. 16-33, PageID.733.

After stating her intention to remain working for Defendant, Vandyke was absent from work on May 22-26. *See* ECF No. 16, PageID.482. Dr. Fee sent Vandyke a formal warning regarding her absences and punctuality. *See* ECF No. 16-34. In June 2023, Vandyke missed three consecutive days and was subsequently fired on June 9, 2023. *Id.*

As a result of her termination, Vandyke commenced this action against Defendant on September 5, 2024. ECF No. 1. Vandyke seeks relief for: racial discrimination in violation of 42 U.S.C. § 1981 (Count I), harassment and discrimination in violation of Title VII (Count II), racial discrimination in violation of ELCRA (Count III), retaliation in violation of ELCRA (Count IV), hostile work environment in violation of ELCRA (Count V), and wrongful discharge in violation of Michigan public policy (Count VI). *Id.* Defendant filed the instant Motion for Summary Judgment on all of Vandyke's claims. *See* ECF No. 16. The Motion is fully briefed, with a sufficient record before the Court; therefore, oral argument is unnecessary to reach disposition. *See* ECF Nos. 18, 19; E.D. Mich. LR 7.1(f).

**II.**

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating the motion, the Court must determine "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"To survive summary judgment, the nonmoving party 'must present significant probative evidence' putting the material facts in doubt." *Walden v. GE Int'l, Inc.*, 119 F.4th 1049, 1057 (6th Cir. 2024) (quoting *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir. 2023)). The "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252.

When evaluating discrimination and retaliation claims at summary judgment, which are based on indirect or circumstantial evidence, the Court applies the *McDonnell-Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973); *see also Redlin v. Gross Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606-07, 613 (6th Cir. 2019) (citations omitted); *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 908 (6th Cir. 2009) ("ELCRA plaintiff also may rely on the indirect, burden-shifting approach sanctioned in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."). Under this framework, a plaintiff must first establish a *prima facie* case of the claim. *See George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). If the *prima facie* case is shown, the burden then shifts to the defendant to "articulate some legitimate, non-discriminatory reason for [their] actions." *George*, 966 F.3d at 459. If satisfied, the burden then shifts back to the plaintiff to show the articulated reason is pretextual. *Laster*, 746 F.3d at 730.

"Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.* (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). And the Court's duty is to "not allow 'th[is] burden-shifting analysis [to] obfuscate the appropriate question—whether there exists a genuine issue of material fact.'" *See Jackson v. VHS Detroit Receiving Hops., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) ("*VHS Detroit*") (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

## III.

The Defendant moves for summary judgment arguing: (1) Vandyke fails to make a *prima facie* case for discrimination under § 1981, Title VII, and ELCRA; (2) she likewise fails to make a *prima facie* case for retaliation under ELCRA; (3) her hostile work environment claim fails because Dr. Fee and Dr. Wright took action on her complaint of harassment, and the reported conduct was not severe or pervasive; and (4) she cannot proceed under her public policy theory when ELCRA covers her claims. *See generally* ECF No. 16. The Court will address each issue in turn.

### A. RACIAL DISCRIMINATION CLAIMS

Under Counts I, II, and III, Vandyke alleges her race was the cornerstone for her termination in violation of § 1981, Title VII, and ELCRA. *See* ECF No. 1, PageID.6-11. Title VII, ELCRA and 42 U.S.C. § 1981 prohibit employers from discriminating or discharging an employee on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)-(c); MICH. COMP. LAWS § 37.2202(1)(a); 42 U.S.C. § 1981. In the Sixth Circuit, racial discrimination claims alleged under § 1981, ELCRA, and Title VII are generally reviewed under the same standard.[4] *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771-72 (6th Cir.

[4] Even with the comparable analysis, the Courts acknowledges that for claims of race discrimination under § 1981 and ELCRA, Vandyke must satisfy the "but-for" causation requirement, meaning that race must be the actual cause, rather than a motiving factor. That "but for" Vandyke's race, she would not have been subjected to the Defendant's desperate treatment. *See Bloomer v. Word Network Operating Co. Inc.*, 785 F. Supp. 3d 251, 267 (E.D. Mich. 2025) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)) (§ 1981);

2018); *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999). Since Vandyke relies on circumstantial evidence, the Court will follow the *McDonnell-Douglas* framework to evaluate her discrimination claim.

***1. Prima Facie Case***

To begin, the Court determines whether Vandyke has established a *prima facie* discrimination claim. *See Palmer v. Scripps Media, Inc.*, 823 F. Supp. 3d 739, 750-51 (E.D. Mich. 2026). To establish a *prima facie* case of racial discrimination, Vandyke must prove that (1) she was a member of a protected class, (2) was qualified for the job and performed it satisfactorily, (3) she suffered an adverse employment action despite her qualifications and performance, and (4) she was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. *Laster*, 746 F.3d at 727. The parties are in dispute over element four.

Defendant argues that Plaintiff has not shown that a similarly situated comparator was treated more favorably. *See* ECF No. 16, PageID.485-488. Plaintiff asserts that she has shown an inference of pretext or discriminatory intent without a

*accord Minner v. Gen. Motors, LLC*, No. 363462, 2024 WL 2868657, at *5 (Mich. Ct. App. June 6, 2024) (citing *Hecht v. Nat'l Heritage Acads., Inc.*, 886 N.W.2d 135, 146 (Mich. 2016)) (ELCRA). Plaintiff asserts that her § 1981 claim also encompassed retaliation (ECF No. 18, PageID.862); however, that is not alleged in the Complaint (*see* ECF No. 1, PageID.6-7), and even if it was, it would fail for the same reasons her retaliation claims fail.

similarly situated comparator, and that is sufficient to meet her *prima facie* burden. *See* ECF No. 18, PageID.862-863.

Plaintiff relies on *Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2017), an age discrimination case, which finds that there are multiple ways in which a plaintiff can establish that the employer gave a job to a younger employee. *Id.* at 529. This, however, does not eliminate Plaintiff's requirement to identify a similarly situated comparator in her race discrimination claim. She also relies on *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741 (6th Cir. 2012), which is a race discrimination case; but that case does not abrogate Plaintiff's need to identify comparators. It simply holds that for the comparators identified; there is no requirement to demonstrate an exact correlation between plaintiff and the comparators. *See Bobo*, 665 F.3d at 751 ("Bobo was not required to demonstrate an exact correlation between himself and others similarly situated; rather, he had to show only that he and his proposed comparators were similar in all relevant respects… and that he and his proposed comparators engaged in acts of comparable seriousness.") (internal citations omitted).

The Sixth Circuit has established three factors, known as the *Mitchell* factors, to aid in determining whether employees are "similarly situated" on allegations of differential disciplinary action:

> … [T]he individuals with whom the plaintiff seeks to compare his/her treatment must have (1) dealt with the same supervisor, (2) have been

> subject to the same standards and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*See VHS Detroit*, 814 F.3d at 777 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). The weight given to each varies case by case. *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). The Court also notes that a finding of a comparator is not a rigid checklist but should be evaluated based on the totality of all *relevant* aspects. *Compare Bobo*, 665 F.3d at 751-53 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)), *with Blount v. Stanley Eng. Fastening*, 55 F.4th 504, 511-12 (6th Cir. 2022).

Here, Plaintiff fails to allege a similarly situated comparator. Defendant identifies three employees (Michelle Smith, Amber Brake, and Emily Spielman) who Vandyke testified were not terminated for similar absences. *See* ECF No. 16, PageID.485 (citing ECF No. 16-15, PageID.666). However, as noted by Defendant, none of these employees were similarly situated in all relevant respects because they did not have similar absences, one had more time off due to her long tenure and status as an Office Manager, and another functioned in a completely different role as a Clinical Assistant and Lab Coordinator. ECF No. 16, PageID.485-486. Plaintiff presents nothing to refute this; and thus waives any argument to the contrary. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in

a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted).

Even if the Court were to accept Plaintiff's view that an inference of discrimination is enough to meet her *prima facie* burden, her claims still fail. First, Plaintiff presents no evidence to refute her attendance issues. She merely states, without any support, "Plaintiff disputes the absences reflected in Defendant's records…" *See generally* ECF No. 18, PageID.846-855. This is not enough to create a genuine issue of material fact which would defeat summary judgment. While the Court can't just take the word of the employer that termination was not based on race, the Court similarly can't just take the word of Plaintiff that it was.

Moreover, Defendant has presented the attendance records (ECF No. 16-6, 16-7), which are compiled based on Plaintiff clocking in and clocking out. ECF No. 19, PageID.873. And Plaintiff has presented nothing to contradict these records. To the extent Plaintiff attempts to refute this evidence with the argument that she had a "similar attendance record before her complaint but was not disciplined until after [making the complaint of racial discrimination]," ECF No. 18, PageID.863, the record shows otherwise. Plaintiff first complained that Smith was making racial comments in November 2022. ECF No. 16, PageID.476, ECF No. 18, PageID.848. The record reflects that, prior to that time, Plaintiff had 10 absences over a ten-month period. *See* ECF Nos. 16-6, 16-7. After her complaints of racial discrimination, she

was absent 28 times within a five-month period, 6 of those days being in April, 9 in May, and 3 in June leading up to her termination. *Id.* No reasonable jury could find an inference of discrimination based on this record.

Plaintiff also argues that the temporal proximity between her complaint and her termination, coupled with the Defendant's abrupt attendance policy change is enough for an inference of discrimination for this claim to proceed to a jury. *See* ECF No. 18, PageID.863. First, there is no factual support for the finding of temporal proximity. Plaintiff first complained about Smith's comments in November 2022 and was not terminated until June 2023. *See* ECF No. 16-15, PageID.645; ECF No. 16-3.[5] And even if she asserts that she continued to complain about Smith closer in time to her termination (*see* ECF No. 16-27, PageID.175), she still fails to rebut her attendance record during that time and at the time of her termination.

Moreover, Plaintiff fails to provide the Court with what changed in the attendance policy and how it negatively impacted her compared to her peers. The Court is not required to scour the record to find this information. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). And as Defendant has pointed out, the attendance policy is an "office policy … [that] does not alter, for example, the amount of days

[5] Plaintiff does assert that she first complained of Miller's comment to Defendant in August 2022, but that does not help her case as that would create more of a time gap between her complaint and termination. *See* ECF No. 16-15, PageID.632.

for PTO for Plaintiff," and if Plaintiff exceeded those days, that would be sufficient grounds for termination. *See* ECF No. 19, PageID.875-876, ECF No. 16-8, PageID.570; *see also Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 569 (6th Cir. 2023) (chronic tardiness and repeated absences are legitimate, nondiscriminatory reasons to terminate employment). Without any support, the Court cannot find that Plaintiff's alleged change in the attendance policy creates a genuine issue for trial.

Therefore, the Court concludes that Plaintiff presents no genuine issue of material fact as to any inference of discrimination and no reasonable jury would find that a similarly situated non-protected employee was treated more favorably than Vandyke, as required to make a *prima facie* case of discrimination.

***2. Pretext***

Even if Plaintiff could meet her burden to establish a *prima facie* case, under the *McDonnell Douglas* framework, she cannot establish that Defendant's proffer reason for termination (attendance) was pretextual.

Pretext is a "commonsense inquiry" that asks: "did the employer fire the employee for the stated reason or not?" *See Jackson v. Genesee Cnty. Rd. Comm'n,* 999 F.3d 333, 351 (6th Cir. 2021). A plaintiff can show pretext in one of three "interrelated ways: (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the employer's actions, or (3) that the proffered reason was insufficient to motivate the employer's action." *Id.* at 350-51

(cleaned up). This burden is "not heavy," and summary judgment will be appropriate only if "no reasonable juror could conclude that the employer's offered reason was pretextual." *Jackson*, 999 F.3d at 351.

Here, Plaintiff argues that "Defendant tolerated identical absences before Plaintiff engaged in protected activity by reporting racially comments made by her coworkers" and that "Defendant changed its attendance policy after Plaintiff's complaints." *See* ECF No. 18, PageID.861. She summarily states that "factual disputes about the attendance justification preclude summary judgment" but fails to state how or even what those disputes are. *Id.* The Court again cannot conjure up facts or arguments on Plaintiff's behalf. And as previously stated, the record before the Court suggest that Plaintiff's attendance was not the same before and after her complaints, and Plaintiff fails to show how the attendance policy was changed. *See infra* (Section A.1). Consequently, Plaintiff fails to establish pretext.

The Court finds that Vandyke has not met her burden of proving a *prima facie* case for race discrimination; and even if she did, she cannot show that Defendant's stated reason (attendance) was pretext for her termination. The Court, therefore, grants summary judgment in favor of Defendant on Counts I, II (to the extent it concerns racial discrimination), and III.

**B. ELCRA RETALIATION**

Under Count IV, Vandyke seeks relief for retaliation in violation of ELCRA because she reported circumstances of discriminatory conduct and was subsequently terminated. *See* ECF No. 1, PageID.11-12. To make a *prima facie* showing of retaliation under ELCRA, Vandyke must show: (1) that she engaged in protected activity, (2) Defendant knew of the exercise of the protected right, (3) Defendant took an adverse employment action against Plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *See El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 670-71 (Mich. 2019) (per curiam) (citation omitted) (alternation in original).[6]

Defendant seeks summary judgment because Plaintiff fails to establish a causal connection between her protected activity and her termination. *See* ECF No. 16, PageID.495. To show a causal connection, "[t]he evidence must show that the defendant 'took adverse employment action *because of* plaintiff's protected activity…'" *Gorbe v. City of Lathrup Village*, No. 356801, 2023 WL 326103, at *9 (Mich, Ct. App. Jan. 19, 2023) (citing *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 472 (Mich. 2003)). While the burden for causation is minimal, it still requires Vandyke to show "'some evidence to deduce a causal connection' between the adverse action and protected activity." *See Gray v. State Farm Mut. Auto. Ins. Co.*,

[6] Generally, ELCRA claims are analyzed in the same manner as those under Title VII. *See Bollano v. Sun Cmtys, Inc.*, 822 F. Supp. 3d 798, 814 (E.D. Mich. 2026) (citing *Abbot v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003)).

159 F.4th 1024, 1033 (6th Cir. 2025) (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009); *A.C. ex rel J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013)). If the adverse action happens right after the protected activity, a plaintiff "may be able to rely on temporal proximity alone to overcome a motion for summary judgment." *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 588 (6th Cir. 2022) (citation omitted). But if "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (quotation marks and citation omitted).

Plaintiff does not separately respond to this argument and instead combines her argument on retaliation with that on her claims of discrimination. *See* ECF No. 18, PageID.859-864. Again, Plaintiff argues that she meets the prima facie case because "there is a clear causal connection because Defendant began enforcing attendance rules and created a new attendance policy only after her complaints." *See id.* at PageID.860. She further states that "[t]emporal proximity between protected activity and adverse action supports an inference of causation when coupled with other indicia of retaliation." *Id*. Again, Plaintiff fails to point to anything in the record that would constitute "other indicia of retaliation." *See* ECF No. 18, PageID.860. And as Defendant correctly argues, an ELCRA retaliation claim

requires more than a temporal connection between the protected conduct and the adverse action to show causation where discrimination-based retaliation is claimed. *See West v. Gen. Motors Corp*, 469 Mich 177, 186 (2003).

For the same reasons that the Court discussed *infra* (Section A) relating to Plaintiff's discrimination claims, she fails to establish that Defendant's "[enforcement] of attendance rules [or creation of] a new attendance policy after her complaint" creates a genuine issue of material fact. Plaintiff solely cites her own deposition testimony for support. *See* ECF No. 18, PageID.860 (citing ECF No. 16-15, PageID.627); but personal beliefs on record in a deposition transcript alone are insufficient to establish a genuine issue of material fact. *See Watson v. City of Cleveland*, 202 F. App'x 844, 854 (6th Cir. 2006) (citing *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986)); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 769 (6th Cir. 2015) (en banc) ("Any negative inference from [plaintiff's] testimony is unreasonable because it comes unaccompanied by facts in the record, save [plaintiff's] own speculation.... [S]peculation ... does not create a genuine dispute of fact ... when it is blatantly contradicted by the record.") (internal quotation marks omitted).

Even when viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Defendant terminated Plaintiff *because of* her complaint of Smith's continued racial slurs. *Gorbe*, 2023 WL 326103 at *9. The

record before the Court reflects that Plaintiff's attendance issues, coupled with her refusal to perform requested tasks[7] and the strains it was placing on other staff[8], were legitimate reasons for her termination. *See* ECF No. 16, PageID.487; ECF No. 19, PageID.872-873; *see also Hrdlicka*, 63 F.4th at 569. Therefore, the Court finds that summary judgment in favor of Defendant is appropriate on Count IV.

### C. HOSTLE WORK ENVIRONMENT UNDER TITLE VII AND ELCRA

Under Counts II and V, Vandyke alleges she was subjected to harassment and a hostile work environment based on race. *See* ECF No. 1, PageID.8-9, 12-13. To prevail on a hostile work environment claim based on race under Title VII or ELCRA, Vandyke must prove that (1) she belongs to a protected class, (2) was subject to unwelcomed harassment, (3) that was based on race, (4) affecting a term, condition, privilege of employment, and (5) the Defendant knew or should have known about the harassment and failed to take action. *See Khalaf*, 973 F.3d at 482 (citing *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017)); *Quinto v. Cross & Peters Co.*, 547 N.W.2d 314, 319-20 (Mich. 1996).

Analysis of a hostile work environment includes both an objective and subjective component. "Conduct that is not severe or pervasive enough to create an

---

[7] On May 15, 2023, Dr. Fee asked Vandyke to train coworkers on certain tasks she performed, but Vandyke resisted the idea and attempted to justify her actions based on how she felt the Defendant insufficiently addressed Smith's continued racial comments. *See* ECF No. 16-31.

[8] *See* ECF No. 16-22, PageID.705 (Vandyke's absences began to overwhelm other co-workers who managed the front desk of the office).

objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21–22; *see also Jackson*, 191 F.3d at 658 ("conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive").

Defendant argues they are entitled to summary judgment on these claims because Plaintiff failed to present evidence that the alleged harassment was "based on race" and Plaintiff cannot establish that the alleged statements of her co-workers were discriminatory or sufficiently "severe or pervasive" to support a cause of action. *See* ECF No. 16, PageID.490.

### *1. Based on Race*

Defendant argues that Plaintiff presents only four statements in support of her hostile work environment claims and that those made by Ms. Brake and Ms. Miller[9] were isolated occurrences (only three in seventeen months) that at best were mere

---

[9] Ms. Brake is alleged to have made a comment that "her high school had a lot of Black people in it and [that] it made it ghetto" and she also made a comment about Black people's hair and that "their locs stink if – if they don't use, like, a certain oil or certain thing in it." ECF No. 16-15, PageID.632. Ms. Miller is alleged to have said to Plaintiff, while at an apple orchard/cider mill during a company outing, "Oh, [Plaintiff] is it not Black enough here for you?" *Id.* at PageID.631.

offensive utterances not actionable harassment. ECF No. 16, PageID.491. While this may be true, the Court must evaluate those claims in connection with the comments made by Ms. Smith because courts look to the totality of the circumstances when assessing hostile work environment claims. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[A] work environment viewed as a whole may satisfy the legal definition of an abusive work environment, for purposes of a hostile environment claim, even though no single episode crosses the Title VII threshold." *Williams v. General Motors Corp.,* 187 F.3d 553, 564 (6th Cir.1999).

"A plaintiff may show that unwelcome harassment occurred and was based on race….by adducing evidence of the use of race-specific and derogatory terms, or comparative evidence of how the alleged harassers treated members of both races in a mixed-race workplace." *See Smith v. P.A.M. Transport, Inc.*, 154 F.4th 375, 383 (6th Cir. 2025) (citing *Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021)). Contrary to Defendant's assertion, Smith's use of terms such as "yessum," "you's," and "I's," are race-specific and derogatory terms, as other courts have recognized. *See, e.g.*, *Ford v. Steak 'N Shake, Inc.*, No. 2:17-cv-2099, 2019WL 13292882, at *6 (C.D. Ill Apr. 12, 2019) ("Clearly, Plaintiff believed the environment to be offensive, and that Cox's statements calling her "master" and saying "yessum, master" in response to Plaintiff's work requests were racial in nature and meant to convey a racial message to Plaintiff."). Plaintiff reported to Defendant

that the use of such terms by Smith was racially offensive. *See* ECF No. 16-15, PageID.635; ECF No. 16-14, PageID.615; ECF No. 16-25, PageID.711. As the *Ford* court found, and is persuasive to this Court, comments that could be seen as racial in nature, referencing language used in the pre-Civil War South carry strong historical, political, and racial connotations. *Id.* And while Defendant, after meeting with Plaintiff and Smith, believed Smith had no racial animus (*see* ECF No. 16-18), a reasonable trier of fact could find otherwise. Therefore, that presents a genuine dispute to be resolved at trial.

***2. Severe and Pervasive***

Defendant further argues Plaintiff cannot establish the comments from her coworkers were severe or pervasive enough to establish her hostile work environment claim. *See* ECF No. 16, PageID.490. "Whether harassment is sufficiently severe or pervasive to create an abusive work environment is quintessentially a question of fact." *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 904 (6th Cir. 2024) (quotation omitted). The Court considers "the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing….and conduct

which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).

There is no dispute that Plaintiff subjectively believed Smith, Miller, and Brake's comments to be racially offensive. *See* ECF No. 16-15, PageID.634-637, 639, 670. She complained to Defendant about each of these racially charged comments on multiple occasions and said it was allowed to continue. *See id.* at PageID.634, 642-643, 665. Plaintiff further testified that Smith's comments were frequent, almost daily in 2022, and continued randomly in 2023. *Id.* at PageID.670.

Defendant, on the other hand, suggests that once they were made aware of Smith's comments in November 2022, they held a meeting with Plaintiff and Smith, determined the "'racial slurs' were not racially motivated and on their face were not discriminatory." *See* ECF No. 16, PageID.493. And then in May 2023, Defendant reviewed Plaintiff's additional complaints and installed a camera to monitor front desk activity on May 30th. *Id.* Despite its installation, Plaintiff claimed the behavior did not cease. *See* ECF No. 16-15, PageID.644.

On this record, the Court finds best to leave the objective component of the severe and pervasive inquiry to the province of the jury. *McNeal*, 117 F.4th at 904. While Defendant asserts it necessarily responded to halt Smith's conduct, a reasonable jury could find that they did not based on Plaintiff's testimony that Smith continually made the comments throughout 2022 and into 2023. Moreover,

Defendant admitting that they did not believe Smith's conduct to be racially motivated or discriminatory creates a genuine issue of material fact on whether Plaintiff was subject to a hostile work environment. Accordingly, summary judgment would not be appropriate on Count II (to the extent that it raises a harassment claim under Title VII) or Count V.

**E. WRONGFUL DISCHARGE**

Finally, under Count VI, Plaintiff alleges her wrongful discharge came in part as a result of her attempt to prevent Defendant from making racial comments and creating a racially charged hostile work environment in violation of Michigan public policy. *See* ECF No. 1, PageID.14-15. Defendant seeks summary judgment on this count because they argue that ELCRA is the exclusive remedy for VanDyke and no other public policy claim for wrongful discharge can be maintained. *See* ECF No. 16, PageID.498 (citing *Kimmelman v Heather Downs Management*, 278 Mich App 569, 573 (2008)). The Court agrees.

Plaintiff argues, without proper support, that Michigan law allows public policy claims that are not coextensive with her ELCRA claim. *See* ECF No. 18, PageID.866. The Court finds this argument unavailing because her claims are innately coextensive with her ELCRA claims. Plaintiff states the reason for her termination was her "refus[al] to condone or remain silent about discriminatory conduct… [and is therefore] not duplicative of her ELCRA claim…" *Id.* However,

that is exactly what is covered in Count III ("Plaintiff continually notified and complained to Defendant through its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication"), Count IV ("Plaintiff engaged in protected activity when she took the following actions, including but not limited to, reporting her concerns about racial discrimination to Defendant's agents") and Count V ("Defendant knew specifically of Plaintiff's mistreatment because she made a complaint") – all of which are brought pursuant to ELCRA; and are therefore limited to that statutory framework.[10] *See* ECF No. 1, PageID.10, 11, 13.

Accordingly, the Court finds summary judgement in favor of Defendant appropriate as to Count VI.[11]

---

[10] Defendant notes in the reply brief, that "[t]he Michigan Court of Appeals had made this exact ruling, before the present case was filed, in another case brought by Plaintiff's Counsel." ECF No. 19, PageID.878 (citing *Abu v City of Ann Arbor*, Unpublished, No. 363487 (MI Ct of App, Jan. 11, 2024) (attached as Ex. 49)). And while not technically binding precedent, the Court gives great weight to the Michigan Court of Appeal's interpretation of Michigan public policy. A review of that opinion reveals that the Michigan Court of Appeals clearly addressed this very argument. *See* ECF No. 19-3, PageID.899. To the extent that Plaintiff seeks an extension of law or some other interpretation, counsel for Plaintiff should notify the Court of such. Failing to include this relevant information is fallacious.

[11] Separately, it is well established that Michigan is an "at-will" termination state, allowing employers to fire employees "for any reason or no reason at all" unless the termination violates public policy. *See Jackson v. Genessee Cnty. Road Comm'n*, 999 F.3d 333, 353 (6th Cir. 2021). However, under Michigan law, at-will termination violates public policy only if the employee is discharged either (1) in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) for the failure or refusal to violate the law in the course of employment; or (3) for exercising a right conferred by a well-established legislative enactment. *See Kellar v. Yunion, Inc.*, 157 F.4th 855, 882 (6th Cir. 2025) (citation omitted); *accord McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (Mich. 2009). Here, despite recognizing this as the standard in her Complaint, Plaintiff fails to even argue that any of

## IV.

Plaintiff has failed to establish a *prima facie* case for racial discrimination under § 1981, Title VII, and ELCRA, and retaliation under ELCRA. Therefore, summary judgment is **GRANTED** in favor of Defendant as to Counts I, II (as it relates to discrimination), III, IV, and V. Likewise, Plaintiff fails to engage in a protected activity that is not coextensive with her ELCRA claims. Consequently, summary judgment is **GRANTED** in favor of Defendant on Count VI.

However, because of the existence of a genuine dispute of material fact on Count II (as it relates to harassment under Title VII) and Count V for hostile work environment under ELCRA, summary judgment is **DENIED**. Those two counts will proceed in this matter.

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

Dated: September 21, 2026
Detroit, Michigan

s/Brandy R. McMillion
HON. BRANDY R. MCMILLION
United States District Judge

---

these exceptions apply. *See* ECF No. 16, PageID.866. The Court finds none of them applicable, and on that basis summary judgment for Defendant would also be appropriate.